# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW MEXICO

In re: ALFONSO ORTEGA,                          No. 13-06-11157

       Debtor.

## ORDER DENYING CONFIRMATION OF DEBTOR'S CHAPTER 13 PLAN

THIS MATTER is before the Court on confirmation of Debtor's Chapter 13 plan. Prestige Financial Services ("Prestige") filed an objection to confirmation, and the Court held a final hearing on September 11, 2006. Debtor's plan includes a vehicle that is subject to 11 U.S.C. § 1325(a)(9), the so-called "hanging paragraph"[1] enacted as part of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") that precludes the application of 11 U.S.C. § 506 to a debt incurred within the 910-day period preceding the date of the filing of the petition that is subject to a purchase money security interest in a vehicle acquired by the debtor for personal use. 11 U.S.C. § 1325(a)(9).[2] Debtor argues that the debt subject to 11 U.S.C. § 1325(a)(9) is limited to that portion of the debt representing the purchase money security interest in the vehicle, which, in this case, should be limited to the purchase price of the vehicle less the

---

[1]*Rowley v. Wells Fargo Financial Acceptance,* __ B.R. __ , 2006 WL 2466648 *2 n.4 (Bankr.S.D.Ill. 2006) (noting that the last paragraph of § 1325(a) is unnumbered and is often referred to as the "hanging paragraph"). *See also In re Vega,* 344 B.R. 616, 620 (Bankr.D.Kan. 2006) (noting that this provision was inserted as "an unnumbered paragraph at the end of 1325(a)(9), which clearly appears not to be a part of-or even related to subsection (9) (which conditions confirmation on debtor's compliance with the duty to file required tax returns), but instead appears related to § 1325(a)(5).").

[2]*See, Vega,* 344 B.R. at 620. ("[U]nless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount of the underlying debt under nonbankruptcy law.")(citation omitted); *In re Sparks,* 346 B.R. 767, 771 (Bankr.S.D.Ohio 2006) (Section 1325(a)(9) prevents the debtor from limiting the secured debt to the value of the collateral).

1

applicable rebate amount. Prestige counters that the rebate was applied to pay off the remaining balance due on a vehicle Debtor traded in as part of the transaction so that the unpaid balance of total amount financed is the proper claim amount that must be addressed in Debtor's Chapter 13 plan. Upon consideration of the evidence in light of the applicable statutes and case law, the Court finds that, in order to comply with 11 U.S.C. § 1325(a)(9), the plan must provide for payment of the unpaid balance of the entire amount financed.

The facts necessary to the determination of the issue before the Court are summarized as follows. Debtor acquired a 2005 Dodge pick-up truck ("Vehicle") from Zangara Dodge on or about August 13, 2005. He financed the transaction. As part of the transaction, Debtor traded in a 1995 Ford Ranger, which, at the time of the transaction, had a remaining balance of $4700.00. Zangara Dodge authorized a trade-in allowance of $1,600.00 on the 1995 Ford Ranger. There was a rebate in the amount of $3,500.00 associated with the sale of the Vehicle. The Retail Installment Sale Contract itemizes the financing of the transaction as follows:

1. Cash Price (including $556.23 sales tax)  $20,697.23

2. Total Downpayment =
Trade-in 1995 Ford Ranger
    Gross Trade-in Allowance:    $ 1600.00
    Less Pay Off Made by Seller:    $ 4700.00
    Equals Net Trade In:    ($ 3100.00)
    + Cash    N/A
    + Other REBATE    $ 3500.00

    $ 400.00

3. Unpaid Balance of Cash Price    $20,297.23
4. Other Charges
    insurance    $ 500.00
    reg fee/admin/trans    $ 78.00
    dealer serv trans fee    $ 219.00

2

Total other charges paid     $    797.00

        5. Amount financed =                    $21,094.23

Prestige financed the transaction and is the lien holder noted on the title to the Vehicle. The Debtor filed a voluntary petition under Chapter 13 of the bankruptcy code on July 11, 2006, fewer than 910 days after the Debtor acquired the Vehicle and after the date upon which BAPCPA became effective.

DISCUSSION

Section 1325(a)(9) provides, in relevant part:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [sic] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor . . .

11 U.S.C. § 1325(a)(9).

Once the elements enumerated by the statute have been satisfied, the amount of the claim "is fixed at the amount of the creditor's claim without resorting to the stripping down procedure mandated by § 506(a)." *Rowley v. Wells Fargo Financial Acceptance,* WL 2466648 *1. *See also, In re Sparks,* 346 B.R. 767, 771 (Bankr.S.D.Ohio 2006) (agreeing with the majority of the case law and finding that "the provisions of § 1325(a) are mandatory and where the debt meets the parameters of the hanging paragraph, the Debtors are prevented from cramming down the secured debt") (citations omitted). Thus, because 11 U.S.C. § 1325(a)(9) provides that 11 U.S.C. § 506[3] does not apply to such debts, the collateral value is not relevant to determine the amount

---

[3]Prior to the enactment of BAPCPA, 11 U.S.C. § 506 was used to bifurcate a claim secured by a vehicle into secured and unsecured portions in order to "cram down" the claim to

3

of the claim. *Vega,* 344 B.R. at 620. *See also, In re Taranto,* 344 B.R. 857, 860 (Bankr.N.D.Ohio 2006) ("Most of the courts interpreting the 910 Provision have held that it merely prevents the bifurcation of an allowed claim into a secured component and an unsecured component and ultimately reach the conclusion that the claims of 910 Creditors are to be *treated* as fully 'secured claims.'")(emphasis in original)(citations omitted).

Here it is undisputed that the debt was incurred within the 910-day period preceding the petition date, that the collateral securing the debt is a vehicle, and that the Debtor acquired vehicle for his personal use. What remains at issue is whether the entire amount of the debt constitutes a purchase money security interest. Debtor cites *In re Vega,* 344 B.R. 616 (Bankr.D.Kan. 2006) for the proposition that only that portion of the debt attributable to the purchase money security interest is not subject to modification under 11 U.S.C. § 1325(a)(9).

In *Vega*, the debtors purchased and financed a 2001 Kia. Twenty months later, the debtors purchased a 1996 Dodge Intrepid and executed a second loan and security agreement. Only the 1996 Dodge Intrepid was pledged as security for the second loan. However, a balance remained on the loan associated with the 2001 Kia, and the creditor added that balance to the second loan. *Vega* 344 B.R. at 618 (stating that the amount remaining due on the first note secured by the Kia would be "rolled into" the new note). The creditor did not retain its security interest in the 2001 Kia. The bankruptcy court held that the purchase money security interest was limited to the purchase price for the 1996 Dodge Intrepid (plus any accrued interest, less any payments), and that the portion of the loan attributable to the remaining balance from the loan

---

the value of the collateral and provide for payment through the plan of the value of the collateral, plus interest, in satisfaction of the secured portion of the claim. *See Vega,* 344 B.R. at 620 (discussing cram down prior to BAPCPA).

4

associated with the 2001 Kia "is an unsecured antecedent debt, which is not entitled to purchase-money treatment under § 1325(a)." *Id.* at 623. Thus, debtors' plan which provided for payment of creditor's secured claim in the amount of the purchase price attributable to the 1996 Dodge, plus interest, complied with 11 U.S.C. § 1325(a)(9). *Id.*

*Vega* is distinguishable from the facts present here. Debtor argues that the rebate is associated with the purchase of the Vehicle and must be applied to reduce the purchase price, thus reducing the amount of the loan subject to the purchase money security interest by the amount of the rebate. The loan documents belie this characterization of the transaction. Unlike *Vega*, the balance of remaining on the loan for the 1995 Ford Ranger was not "rolled into" the note for the Vehicle. Instead, after attributing a trade-in value to the 1995 Ford Ranger and crediting that amount against the outstanding balance on the 1995 Ford Ranger, the creditor applied the rebate to complete the payoff on the 1995 Ford Ranger, leaving the sum of $400.00 attributable to the rebate that was treated as a down-payment for the Vehicle. Thus, the total amount financed, less any payments made on the loan, constitutes the amount attributable to the purchase money security interest in the Vehicle and is subject to 11 U.S.C. § 1325(a)(9). *See Vega,* 344 B.R. at 622 ("Whether a creditor has a purchase money security interest securing a debt is a matter of state law.") (citing *In re Billings,* 838 F.2d 405 (10th Cir. 1988)(remaining citations omitted)). *See also,* N.M.S.A. § 44-9-103 (Repl. Pamp. 2001) (defining purchase money security interest as a security interest to the extent the goods are "purchase money collateral," defined as goods that secure a "purchase money obligation," defined as an obligation "incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the use of the collateral if the value is in fact so used.").

5

The proof of claim filed by Prestige reflects a total claim in the amount of $19,669.12. Of that amount, $19,462.05 is identified as a secured claim, and $207.07 is identified as an unsecured claim. Because the Court concludes that the total amount financed, less payments made, is not subject to modification in accordance with 11 U.S.C. § 1329(a)(9), Debtor's plan must provide for payment of $19,669.12 to Prestige. Debtor's plan does not so provide, and, therefore, cannot be confirmed.

WHEREFORE, IT IS HEREBY ORDERED that confirmation of Debtor's Chapter 13 Plan is denied.

_____
MARK B. McFEELEY
United States Bankruptcy Judge

COPY TO:

Christopher Trammell
Attorney for Debtor
3900 Juan Tabo NE
Albuquerque, NM 87111-3984

T Kyle Campbell, III
Attorney for Prestige Financial Services
PO Box 37229
Albuquerque, NM 87176-7229

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Avenue SW, Suite 350
Albuquerque, NM 87102-3111